IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-CV-1279(PAB)(KLM)

DEBORAH DONOGHUE,

    Plaintiff

v.

BOHEMIAN INVESTMENTS LLC, a Colorado Limited Liability Company,
BOCO INVESTMENTS, LLC, a Colorado Limited Liability Company,
PAT STRYKER LIVING TRUST Dated October 14, 1976,
and PAT STRYKER

    Defendants,

and

OMNI BIO PHARMACEUTICALS, INC., a Colorado corporation,
Nominal Defendant.

---

**SCHEDULING ORDER**

---

**1. DATE OF CONFERENCE AND
APPEARANCES OF COUNSEL AND PRO SE PARTIES**

*Date of Conference:* November 4, 2015

*Appearances:*

- *For Plaintiff Deborah Donoghue (counsel appearing telephonically):*

David Lopez, Esq.
P.O. Box 323
Southampton, NY 11969
Telephone: (631) 287-5520
Email: DavidLopezEsq@aol.com

Miriam Tauber
885 Park Avenue No. 2A
New York, NY 10075
Telephone: (323) 790-4881
Email: MiriamTauberLaw@gmail.com

- *For Defendant Bohemian Investments:*

Scott Warren Wilkinson
Davis & Ceriani, P.C.
1350 17th Street
Market Center, Suite 400
Denver, CO 80202
Telephone: (303) 534-9000
Email: swilkinson@davisandceriani.com

- *For Defendants BOCO Investments, LLC, Pat Stryker Living Trust, and Pat Stryker:*

John V. McDermott
V. Aaron Hughes
Brownstein Hyatt Farber Schreck, LLP-Denver
410 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 223-1100
Email: jmcdermott@bhfs.com
       vhughes@bhfs.com

- *For Nominal Defendant Omni Bio Pharmaceuticals, Inc.:* TBD

## 2. STATEMENT OF JURISDICTION

*[Provide a concise statement of the basis for subject matter jurisdiction with appropriate statutory citations. If jurisdiction is denied, give the specific reason for the denial.]*

Plaintiff asserts federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff's claim arises directly under Section 16(b) of the Securities Exchange Act 15 U.S.C. § 78p(b) and requires the Court to construe and apply that federal statute.

## 3. STATEMENT OF CLAIMS AND DEFENSES

*[Provide concise statements of all claims or defenses. Each party, in light of formal or informal discovery undertaken thus far, should take special care to eliminate frivolous claims or defenses. Fed. R. Civ. P. 11 and 16(c)(2)(A). Do not summarize the pleadings. Statements such as defendant denies the material allegations of the complaint" are not acceptable.]*

    a.    *Plaintiff(s):* Defendants, who were beneficial owners of more than 10% of

the stock of Nominal Defendant Omni Bio Pharmaceuticals, Inc. and thus "insiders" subject to the short swing trading restrictions of Section 16(b), engaged in a series of transactions in Omni stock in connection with loans made to the Company – including the acquisition and modification of warrants and the increase in stock "conversion rights" associated with the loans. These transactions constitute "purchase" and "sales" within a six-month period under Section 16(b) under the statute and federal regulations, which prescribe the calculation of profits that must be disgorged to Omni and returned to its shareholders.

  b.  *Defendant(s):*

Defendants deny that they engaged in any conduct that would subject them to liability under 15 U.S.C. 78(p) (hereinafter, "Section 16(b)"). Specifically, and without limitation:

1. Defendants did not engage in any non-exempt pairs of purchase and sale transactions involving the stock of Nominal Defendant Omni occurring within six months of one-another as required to trigger Section 16(b).
2. Defendants' alleged amendments of certain derivative rights as set forth in Plaintiff's First Amended Complaint ("FAC") were not material.
3. If material, Defendants' alleged amendments of certain derivative rights as set forth in Plaintiff's FAC are exempt from Section 16(b) under 17 C.F.R. § 240.16b-6(d) or such other exemptions as may apply.
4. If any of the transactions alleged in Plaintiff's FAC can be interpreted as non-exempt sales subject to Section 16(b), they did not result in any profit to Defendants.
5. If Plaintiff ever had any colorable claim for relief under Section 16(b), such claim was foreclosed by the Assignment Agreement and Covenant Not to Sue dated on or about June 23, 2015 (the "Settlement Agreement").
6. Plaintiff's FAC fails to state a claim on which relief may be granted for all the reasons set forth in ECF Nos. 30 and 31.
7. Plaintiff is not entitled to any relief under the doctrines of offset and/or recoupment because: a) Bohemian is a senior secured creditor of Omni; b) prevailing on her claims will require Plaintiff to invalidate a material portion of the Settlement Agreement, in effect reinstating Bohemian's right to pursue Omni for the full amount of the debt (over $2.5 million) compromised in the Settlement Agreement; c) there is no set of circumstances where Plaintiff can possibly recover an amount in excess of the amount Omni owes to Bohemian; and d) even if Plaintiff were able to establish liability under Section 16(b)—though, for the reasons set forth above, it can't—Bohemian would be entitled to negate the entire liability by offsetting against it a small portion of the unpaid loan balance Omni would once again owe to Bohemian if the Settlement Agreement were invalidated.
8. Plaintiff is not entitled to collect any attorney's fees for pursuing claims on behalf of Omni because there is no set of circumstances under which Plaintiff can hope to bestow any benefit upon Omni.

Defendants note that they have moved to dismiss Plaintiff's FAC. No answers have been filed

by any party and no discovery has been conducted. Defendants reserve the right to assert any and all defenses they believe may be warranted by the evidence made available to them in their respective Answers or at such other stages of the litigation as may be appropriate.

   c. *Other Parties:* Nominal Defendant Omni has failed to appear in this action and has not taken a position on any of the claims or defenses asserted in this case.

## 4. UNDISPUTED FACTS

*[When the parties have the Rule 26(f) meeting, they should make a good-faith attempt to determine which facts are not in dispute.]*

*The following facts are undisputed:*[1]

 1) As of April 14, 2014, Defendant BOCO Investments, LLC ("BOCO") held the following warrants to purchase shares of Omni's common stock (collectively, the "BOCO Warrants"):

| Warrant Number | Expiration Date | Shares | Exercise Price (per share) |
|---|---|---|---|
| PP12 INV-12 | 10/31/2017 | 600,000 | $1.50 |
| O-1 (R2) | 3/31/2017 | 2,900,000 | $0.50 |
| O-1 (R2) | 3/31/2017 | 1,450,000 | $1.00 |

*See* ECF No. 30-1 at Schedule 1.3.

 2) Effective April 15, 2014, Bohemian entered into a Loan and Warrant Purchase Agreement with Omni (the "2014 Purchase Agreement"). *See* ECF No. 3-1.

 3) Under the 2014 Purchase Agreement, Bohemian agreed to loan Omni up to $2 million via a series of draws. *See* ECF No. 30-1 at § 1.1; *see also* ECF No. 30-2 (Secured Convertible Promissory Note in the amount of $2 million dated April 25, 2014, hereinafter, the "2014 Note"). The loan from Bohemian to Omni evidenced by the 2014 Purchase Agreement and the 2014 Note is referred to herein as the "2014 Loan."

 4) As consideration for Bohemian's agreement to loan Omni up to $2 million dollars, Omni agreed to:

---

[1] Defined terms shall have the meaning accorded herein for the purposes of the undisputed fact section only.

4

      a.     Permit Bohemian, at its election, to convert the outstanding balance due under the 2014 Note into Omni's common stock at the price of $.20 per share (ECF No. 30-1 at ¶ 1.2);[2]

      b.     Issue to Bohemian a warrant to purchase 1 million shares of Omni's common stock (ECF No. 30-1 at ¶ 1.3(a));

      c.     Issue to BOCO a warrant to purchase 3 million shares of Omni's common stock (ECF No. 30-1 at ¶ 1.3(b));

      d.     Extend the expiration date of the existing BOCO Warrants and reset the exercise price to $.25 per share (ECF No. 30-1 at ¶ 1.3(c)).

5)    Between April 25, 2014 and December 12, 2014, Bohemian loaned Omni a total principal amount of $2 million under the 2014 Note as follows:

      a.     $500,000 on April 25, 2014;

      b.     $500,000 on June 16, 2014;

      c.     $500,000 on September 25, 2014;

      d.     $500,000 on December 12, 2014.

*See* ECF No. 30-3 at p. 5 "Schedule of Borrowings."

6)    At Omni's request, on or about January 23, 2015 Bohemian agreed to restructure certain provisions of the 2014 Note. The parties executed an Amended Secured Convertible Promissory Note (the "First Amendment"). *Compare* ECF No. 30-2 (2014 Note), *with* ECF No. 30-3 (First Amendment).

7)    The First Amendment modified the 2014 Note as follows:

---

[2] The 2014 Loan also contained an option to convert at a floating contingent conversion rate tied to a potential future public offering of Omni's stock, but it is undisputed that the floating conversion right was never exercised.

5

    a. The Maturity Date (or due date) was extended from April 24, 2015 to December 31, 2017;

    b. The floating contingent conversion rate was changed (though the fixed conversion price remained constant and the contingent conversion provisions were never exercised).

*Compare* ECF No. 30-2 (2014 Note), *with* ECF No. 30-3 (First Amendment).

8) At Omni's request, on or about March 11, 2015, Omni and Bohemian entered into a Second Modification and Exchange Agreement (the "Second Exchange Agreement"). *See* ECF No. 30-4.

9) The Second Exchange Agreement increased the principal amount of Bohemian's loan to Omni to $2.3 million. *See* ECF No. 30-4 at ¶ 2(a).

10) Contemporaneous with the Second Exchange Agreement, Omni executed a Second Amended Secured Convertible Promissory Note ("Second Amendment"). *See* ECF No. 30-5. The additional debt incurred by Omni remained subject to Bohemian's conversion rights at the same fixed rate of $.20 per share. *See* ECF No. 30-5 at ¶ 3.

11) On or about April 10, 2015, Ms. Donoghue sent a letter to Omni's Board of Directors demanding that Omni commence proceedings against Bohemian pursuant to Section 16(b). *See* ECF No. 30-6.

12) On or about May 8, 2015, Omni filed a Form 8-K with the United States Securities and Exchange Commission stating:

> The Company has been unsuccessful in its fundraising and partnering/licensing efforts, and does not anticipate being able to raise sufficient capital to continue operations. Consequently, the Board of Directors of the Company has approved an orderly wind down of the Company, including negotiations with its senior secured creditor, Bohemian Investments, LLC.

*See* ECF No. 30-7.

13) On or about June 23, 2015, Omni and Bohemian entered into an Assignment Agreement and Covenant Not to Sue (hereinafter, the "Settlement Agreement"). *See* ECF No. 30-8.

14) As part of the consideration for the Settlement Agreement, both Omni and Bohemian agreed not to "sue or proceed in any manner . . . because of or arising out of the Debt and any events, actions or inactions related thereto." ECF No. 30-8 at ¶ 6. The term "Debt" as used in the Settlement Agreement was defined to include all sums loaned to Omni by Bohemian under the 2014 Note, the First Amendment and the Second Amendment. ECF No. 30-8 at ¶ A.

## 5. COMPUTATION OF DAMAGES

*[Include a computation of all categories of damages sought and the basis and theory for calculating damages. See Fed. R. Civ. P. 26(a)(1)(A)(iii). This should include the claims of all parties. It should also include a description of the economic damages, non-economic damages, and physical impairment claimed, if any.]*

### Plaintiff:

Plaintiff calculates Defendants' potential short swing liability from transactions constituting purchases and sales of Omni securities within a six-month period under Section 16(b) pursuant to SEC Rule 16b-6(c)(2), 17 C.F.R. § 240.16b-6(c)(2), which provides that maximum profits from purchases and sales of "derivative securities having different characteristics but related to the same underlying security" is equal to "the difference in price of the underlying security on the date of purchase or sale and the date of sale or purchase."

The table below lists the dates of the alleged transactions, describes the transactions and the number of shares underlying each, identifies their treatment as Section 16(b) purchases and/or sales, and lists the underlying (closing) share price of Omni stock as of each respective date. Because Plaintiff's computation of damages is based on matching transactions in different derivative securities, Plaintiff uses the underlying stock price on the date of each transaction as the relevant per-share "purchase" and "sale" price in compliance with Rule 16b-6(c)(2). Profits are computed using the "lowest-in, highest-out" method prescribed under Section 16(b) upheld by the Second Circuit in the seminal case *Smolowe v. Delendo Corp.*, 136 F.2d 231, 234 (2d Cir. 1943).

| Date | Transaction Description | Section 16(b) Treatment SEC Rule 16b-6(a), 17 C.F.R. § 240.16b-6(a); *Foster Pepper & Shefelman,* SEC No-Action Letter (Dec. 20, 1991) | Matching Price – Underlying (Closing) Stock Price |
|---|---|---|---|

7

| | | | |
|---|---|---|---|
| April 15, 2014 | Acquisition of warrant to purchase 1,000,000 shares (Bohemian); 3,000,000 shares (BOCO), in connection with the Loan and Purchase Agreement (LPA) between Defendants and the Company | Acquisition of "right to purchase," or "establishment of call equivalent position" – **Purchase of total of 4 million shares** underlying the warrants. | $.25 |
| April 15, 2014 | Material amendments to warrants held by BOCO covering a total of 4,950,000 shares (changes to expiration date and exercise price) in connection with the LPA | Cancellation (disposition) of warrants covering 4,950,000 shares and simultaneous re-grant (acquisition) of new warrants with amended terms covering same number of shares – Simultaneous **sale and purchase** of **4,950,000 shares** underlying the warrants | $.25 |
| April 25, 2014 | As a result of Omni's drawdown of $500,000 under the LPA, Defendants acquired "conversion rights" to purchase $500,000 worth of Omni shares at a fixed ($.20) exercise price | Establishment of "call equivalent position" – **Purchase of total of 2,500,000 shares** underlying the "conversion rights" acquired. | $.25 |
| June 16, 2014 | Omni's drawdown of $500,000 under the LPA; acquisition of "conversion rights" by Defendants | **Purchase of total of 2,500,000 shares underlying** the conversion rights acquired. | $.21 |
| Sept. 25, 2014 | Omni's drawdown of $500,000 under the LPA; acquisition of "conversion rights" by Defendants | **Purchase of total of 2,500,000 shares** underlying the conversion rights acquired. | $.21 |
| Dec. 12, 2014 | Omni's drawdown of $500,000 under the LPA; acquisition of "conversion rights" by Defendants | **Purchase of total of 2,500,000 shares** underlying the conversion rights acquired. | $.29 |
| Jan. 23, 2015 | Material amendments to terms of "conversion rights" covering a total of 10,000,000 shares, acquired by Defendants by virtue of Omni's drawdowns under the LPA (changes to conversion deadline and conversion price) | Disposition of conversion rights covering 10,000,000 shares and simultaneous acquisition of new conversion rights with amended terms covering same number of shares – Simultaneous **sale and purchase** of **10,000,000 shares** | $.29 |

8

| | | | |
|---|---|---|---|
| Mar. 11-13, 2015 | LPA credit cap increased by $300,000; additional conversion rights issued to Defendants providing the right to purchase $300,000 worth of Omni stock at a fixed $.20 exercise price (up to 1,500,000 Omni shares). | Establishment of "call equivalent position" – **Purchase** of **1,500,000 shares** | $.28 |
| June 23, 2015 | LPA and Defendants' conversion rights thereunder canceled. | "Liquidation" of "call equivalent position" – **sale** of total of **11,500,000** shares underlying the conversion rights held by Defendants under the LPA. | $.03 |

Matching lowest-price purchase transactions with highest-price sale transactions within a six-month period yields maximum recoverable short swing profits of $315,000 under Rule 16b-6(c)(2). The following transactions were "matched" to calculate profits:

- September 25, 2014 purchase (at $.21 per share) *with*
  Jan. 23, 2015 sale (at $.29 per share):
  ($.29 - $.21) x (2,500,000 shares) = $200,000

- June 16, 2014 purchase (at $.21 per share) *with*
  April 15, 2014 sale (at $.25 per share):
  ($.25 - $.21) x (2,500,000 shares) = $100,000

- March 12, 2015 purchase (at $.28 per share) *with*
  Jan. 23, 2015 sale (at $.29 per share):
  ($.29 - $.28) x (1,500,000 shares) = $15,000

**Aggregate profits from these sets of matched transactions = $315,000**

<u>Defendants:</u>

Defendants have not yet filed their answers as of the date this document is filed. To the extent Plaintiff's claims survive Defendants' Motions to Dismiss (ECF Nos. 30 and 31), Defendants reserve the right to assert such counterclaims and defenses as may be justified by the claims then pending (including, without limitation, claims to recover costs and attorney's fees and claims/defenses based on the offset or recoupment of amounts owed by Omni to Defendants). Offset and recoupment are defenses when used to negate potential liability so no "calculation" of potential damages is required. Defendants entitlement to attorney's fees and costs, and the amount of the same, are dependent upon future events/determinations and cannot be calculated at this time.

## 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

    a.    *Date of Rule 26(f) meeting:* September 21, 2015.

    b.    *Names of each participant and party he/she represented:*

Miriam Tauber,
for Plaintiff Deborah Donoghue.

Scott Warren Wilkinson,
Davis & Ceriani, P.C.,
for Defendant Bohemian Investments.

John V. McDermott, V. Aaron Hughes,
Brownstein Hyatt Farber Schreck, LLP-Denver,
for Defendants BOCO Investments, LLC; Pat Stryker Living Trust; and Pat Stryker.

    c.    *Statement as to when Rule 26(a)(1) disclosures were made or will be made:*

October 5, 2015

    d.    *Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1):* N/A

    e.    *Statement concerning any agreements to conduct informal discovery:*

*[State what processes the parties have agreed upon to conduct informal discovery, such as joint interviews with potential witnesses or joint meetings with clients to discuss settlement, or exchanging documents outside of formal discovery. If there is agreement to conduct joint interviews with potential witnesses, list the names of such witnesses and a date and time for the interview which has been agreed to by the witness, all counsel, and all pro se parties.]*

In a letter dated July 8, 2015, Defendant Bohemian Investments outlined its position that Bohemian had no short swing profits to disgorge and provided Plaintiff with a selection of documents relating to some of the alleged short swing transactions. Plaintiff reviewed that letter and the attached documents in conjunction with the public filings, and subsequently filed the First Amended Complaint alleging additional short swing transactions and naming additional Defendants BOCO Investments, LLC, Pat Stryker Living Trust, and Pat Stryker.

    f.    *Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system:* ~~None yet.~~ Parties shall use a unified exhibit numbering system for depositions.

10

*[Counsel and pro se parties are strongly encouraged to cooperate in order to reduce the costs of litigation and expedite the just disposition of the case. Discovery and other litigation costs may be reduced, for example, through telephone depositions, joint repositories for documents, use of discovery in other cases, and extensive use of expert affidavits to support judicial notice. Counsel and pro se parties also will be expected to use a unified exhibit numbering system if required by the practice standards of the judicial officer presiding over the trial of this case.]*

      g.    Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

*[In such cases, the parties must indicate what steps they have taken or will take to (I) preserve electronically stored information; (ii) facilitate discovery of electronically stored information; (iii) limit the associated discovery costs and delay; (iv) avoid discovery disputes relating to electronic discovery; and (v) address claims of privilege or of protection as trial- preparation materials after production of computer-generated records. Counsel should describe any proposals or agreements regarding electronic discovery made at the Rule 26(f) conference and be prepared to discuss issues involving electronic discovery, as appropriate, at the Scheduling Conference.]*

*[When the parties have their Rule 26(f) meeting, they must discuss any issues relating to the disclosure and discovery of electronically stored information, including the form of production, and also discuss issues relating to the preservation of electronically stored information, communications, and other data. At the Rule 26(f) meeting, the parties should make a good faith effort to agree on a mutually acceptable format for production of electronic or computer-based information. In advance of the Rule 26(f) meeting, counsel carefully investigate their client's information management systems so that they are knowledgeable as to its operation, including how information is stored and how it can be retrieved.]*

      Neither Plaintiff nor Defendants anticipate that this case will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

      h.    Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

*[The parties are required by Fed. R. Civ. P. 26(f)(2) to have discussed the possibilities for a prompt settlement or resolution of the case by alternate dispute resolution. They must also report the result of any such meeting, and any similar future meeting, to the magistrate judge within 14 days of the meeting.]*

No settlement discussions have taken place as of this time.

## 7. CONSENT

*[Pursuant to D.C.COLO.LCivR 72.2, all full-time magistrate judges in the District of*

11

*Colorado are specially designated under 28 U.S.C. § 636(c)(1) to conduct any or all proceedings in any jury or nonjury civil matter and to order the entry of judgment. Parties consenting to the exercise of jurisdiction by a magistrate judge must complete and file the court-approved Consent to the Exercise of Jurisdiction by a United States Magistrate Judge form.]*

*[Indicate below the parties' consent choice. Upon consent of the parties and an order of reference from the district judge, the magistrate judge assigned the case under 28 U.S.C.§ 636(a) and (b) will conduct all proceedings related to the case.]*

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

*[In the majority of cases, the parties should anticipate that the court will adopt the presumptive limitations on depositions established in Fed. R. Civ. P. 30(a)(2)(A)(I) and 33(a)(I). The parties are expected to engage in pretrial discovery in a responsible manner consistent with the spirit and purposes of Fed. R. Civ. P. 1 and 26 through 37. The parties are expected to propose discovery limits that are proportional to the needs of the case, the amount in controversy, and the importance of the issues at stake in the action. See Fed. R. Civ. P.26(g)(1)(B)(iii). The court must limit discovery otherwise permitted by the Federal Rules of Civil Procedure if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the action." See Fed. R. Civ. P. 26(b)(2)(C).]*

    a.    *Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.*

*[If a party proposes to exceed the numerical limits set forth in Fed. R. Civ. P. 30(a)(2)(A)(I), at the scheduling conference they should be prepared to support that request by reference to the factors identified in Fed. R. Civ. P. 26(b)(2)(C)]*

[handwritten: parties are limited to 15 rogs per side, 10 depos per side.]

Defendants propose a limitation of 15 interrogatories. ~~Plaintiff proposes no modification to the~~ number of interrogatories allowed under the Federal ~~Rules.~~

    b.    *Limitations which any party proposes on the length of depositions.*

~~None at this time.~~ [handwritten: Maximum of one day of 7 hours per witness, absent further leave of court.]

    c.    *Limitations which any party proposes on the number of requests for production and/or requests for admission.*

Defendants propose a limitation of 15 requests for production and 15 requests for admission [handwritten: per side] (exclusive of requests going solely to the authenticity of documents, which may be unlimited in number). Plaintiff proposes no modification to the number of these discovery requests allowed under the Federal

Rules.

> *[If the parties propose more than twenty-five (25) requests for production and/or requests for admission, at the scheduling conference they should be prepared to support that proposal by reference to the factors identified in Fed. R. Civ. P. 26(b)(2)(C).]*

    d.    *Other Planning or Discovery Orders:* ~~N/A~~ [handwritten: See Order #6 at p. 2, section E. 1. © Parties shall file a motion w/ proposed order under FRE 502(d) on or before Nov. 12, 2015.]

> *[Set forth any other proposed orders concerning scheduling or discovery. For example, the parties may wish to establish specific deadlines for submitting protective orders or for filing motions to compel.]*

### 9. CASE PLAN AND SCHEDULE

    a.    *Deadline for Joinder of Parties and Amendment of Pleadings:*

> *[Set time period within which to join other parties and to amend all pleadings. This deadline refers to timing only and does not eliminate the necessity to file an appropriate motion and to otherwise comply with Fed. R. Civ. P. 15. Unless otherwise ordered in a particular case, for good cause, this deadline should be no later than 45 days after the date of the scheduling conference, so as to minimize the possibility that late amendments and joinder of parties will precipitate requests for extensions of discovery cutoff, final pretrial conference, and dispositive motion dates. Counsel and pro se parties should plan discovery so that discovery designed to identify additional parties or claims is completed before these deadlines.]*

~~45 days after Defendants' Answer is filed.~~ [handwritten: 45 days after ∆'s Answer is filed.]

    b.    *Discovery Cut-off:* [handwritten: (means discovery deadline + deadline to make discovery motions)]

Fact discovery cut-off: ~~5 months from the date Defendants' Answer is filed.~~ [handwritten: 5 months after ∆'s Answer is filed.]

~~Expert discovery cut-off: 8 months from the date Defendants' Answer is filed.~~

    c.    *Dispositive Motion Deadline:*

9 ~~months from the date Defendants' Answer is filed~~ [handwritten: 6 months after ∆s' Answer is filed]

> *[Set time periods in which discovery is to be completed and dispositive motions are to be filed.]*

    d.    *Expert Witness Disclosure*

        1.    The parties shall identify anticipated fields of expert testimony, if any.

Defendants state that they anticipate expert testimony on the questions of liability and damages. [handwritten: Damages re valuation of patent rights and quantification of damages re issue ~~set-off~~ / profit from "sales" / Application of Section 16.]

Plaintiff does not anticipate a need for expert testimony, and states that liability and damages are governed and prescribed by the statute, applicable SEC Rules, agency guidance, and relevant case law.

  2. *Limitations which the parties propose on the use or number of expert witnesses.*

Defendants propose ~~a limitation of 3 expert witnesses per party.~~ [handwritten: 1 expert witness per side party, absent further leave of court]

To the extent that expert testimony is allowed, Plaintiff proposes a limitation of 1 expert witness per party.

  3. The parties shall designate all [handwritten: affirmative] experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:

~~6 months from the date Defendants' Answer is filed.~~ [handwritten: 3 months after D's Answer is filed.]

   *[This includes disclosure of information applicable to "Witnesses Who Must Provide A Written Report" under Rule 26(a)(2)(B) and information applicable to "Witnesses Who Do Not Provide a Written Report" under Rule 26(a)(2)(C).]*

  4. *The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:*

~~7 months from the date Defendants' Answer is filed.~~ [handwritten: 4 months after D's Answer is filed.]

   *[This includes disclosure of information applicable to "Witnesses Who Must Provide A Written Report" under Rule 26(a)(2)(B) and information applicable to "Witnesses Who Do Not Provide a Written Report" under Rule 26(a)(2)(C).]*

*[Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2)(B), no exception to the requirements of the Rule will be allowed by stipulation unless the stipulation is in writing and approved by the court. In addition to the requirements set forth in Rule 26(a)(2)(B)(I)-(vi), the expert's written report also must identify the principles and methods on which the expert relied in support of his/her opinions and describe how the expert applied those principles and methods reliably to the facts of the case relevant to the opinions set forth in the written report.]*

  e. *Identification of Persons to Be Deposed:*

*[List the names of persons to be deposed and provide a good faith estimate of the time needed for each deposition. All depositions must be completed on or before the discovery cut-off date and the parties must comply with the notice and scheduling requirements set for in D.C.COLO.LCivR 30.1.]*

Plaintiff identifies: Defendant Pat Stryker; Rule 30(b)(6) designated witnesses from each of the entity Defendants and the Nominal Defendant. Plaintiff estimates that the maximum time needed for the deposition of each witness is 5 hours.

Defendants identify: Plaintiff Deborah Donoghue, one or more representatives of the Board of Directors of Nominal Defendant Omni, a 30(b)(6) of Omni.

*Defendants identify:*

  f. *Deadline for Interrogatories:*

*[The parties are expected to serve interrogatories on opposing counsel or a pro se party on a schedule that allows timely responses on or before the discovery cut-off date.]*

~~30~~ 45 days prior to the ~~fact~~ discovery cut-off (to be set when Defendants' Answer is filed).

  g. *Deadline for Requests for Production of Documents and/or Admissions:*

~~45~~ days prior to the ~~fact~~ discovery cut-off (to be set when Defendants' Answer is filed).

*[The parties are expected to serve requests for production and/or requests for admission on opposing counsel or a pro se party on a schedule that allows timely responses on or before the discovery cut-off date.]*

## 10. DATES FOR FURTHER CONFERENCES

*[The magistrate judge will complete this section at the scheduling conference if he or she has not already set deadlines by an order filed before the conference.]*

  a. Status conferences will be held in this case at the following dates and times: **As needed**.

  b. A final pretrial conference will be held in this case on **a date to be determined** at ____ o'clock ____ m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference. **In the future, parties shall file joint mo to set FPTC w/in 20 days after dispositive motion deadline.**

## 11. OTHER SCHEDULING MATTERS

  a. Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement:

There were no other matters on which counsel were unable to reach an agreement. The parties do, however, agree that in the event Plaintiff successfully obtains a net recovery on any of its claims, any claim by Plaintiff for costs or fees associated with the same shall be dealt with after

15

trial (or after liability is otherwise determined) pursuant to F.R.C.P. 54. In this regard, Defendants preserve for the record their right to conduct discovery and or present expert opinion concerning the propriety of Plaintiff's fee claim, if any.

    b.  *Anticipated length of trial and whether trial is to the court or jury:*

5 days to a jury.

    c.  *Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, 103 Sheppard Drive, Durango, Colorado 81303-3439:* N/A.

*[Determination of any such request will be made by the magistrate judge based on the individual needs of the case and the availability of space and security resources.]*

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

*[The following paragraphs shall be included in the scheduling order:]*

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all pro se parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C. Colo. L. Civ. R. 7.1(a).

In addition to filing an appropriate notice with the clerk's office, a *pro se* party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

## 13. AMENDMENTS TO SCHEDULING ORDER

*[Include a statement that the scheduling order may be altered or amended only upon a showing of good cause.]*

This Scheduling Order may be altered or amended only upon a showing of good cause.


DATED at Denver, Colorado, this 4 day of Nov, 2015.

BY THE COURT:

_____
United States Magistrate Judge

APPROVED:

/s/ Miriam Tauber                                    /s/ Scott Warren Wilkinson

_____      _____
Miriam Tauber                                        Scott Warren Wilkinson
885 Park Avenue 2A                                   Davis & Ceriani, P.C.
New York, NY 10075                                   1350 17th Street
(323) 790-4881                                       Market Center, Suite 400
                                                     Denver, CO 80202
/s/ David Lopez                                      (303) 534-4618
David Lopez
171 Edge of Woods Road                               *Attorneys for Defendants*
PO Box 323                                           *BOCO Investments, LLC,*
Southampton, NY 11968                                *Pat Stryker Living Trust,*
                                                     *and Pat Stryker.*
*Attorneys for Plaintiff*
                                                     /s/ John V. McDermott

                                                     _____
                                                     John V. McDermott
                                                     V. Aaron Hughes
                                                     Brownstein Hyatt Farber Schreck, LLP-
                                                     Denver
                                                     410 17th Street, Suite 2200
                                                     Denver, CO 80202
                                                     (303) 223-1100

                                                     *Attorneys for Defendants*
                                                     *Bohemian Investments LLC*